No. 1438.—Schneider & Zuberbier *v.* N. Dreyfus.—W. H. Letchford & Co., intervenors.

To avoid the examinations of issues improperly raised by the answer, the more regular practice is, to object to the introduction of testimony to sustain them. 20 An. 193. ·

Where a sale of personal property has been completed by delivery (although fraudulent), the judgment creditor of the vendor cannot seize it in the hands of the purchaser until the sale is declared null by a revocatory action ; the case is different in a simulation.

APPEAL from the Sixth District Court of New Orleans. *Duplantier, J. Hornor & Benedict,* for plaintiffs and appellants. *Bradford, Lea & Finney,* for defendant and appellee.

Howell, J. Plaintiff brought suit against defendant for the amount of a bill of groceries, and, claiming the vendor's lien, caused the goods sold to be sequestered. W. H. Letchford & Co., wholesale dry goods merchants, intervened, claiming to be the owners of said goods by virtue of a transfer, by authentic act, of the contents of the grocery store of defendant, including the goods sequestered, delivery of which, it is alleged, was made before the seizure herein. Plaintiffs answered, charging said sale to be fraudulent and simulated. Judgment was rendered in favor of the intervenors, and the plaintiffs appealed.

It is shown that the deputy sheriff, charged with the writ of sequestration, found a man, wearing the badge of a police officer, in possession of the store, who referred him to the chief of police. The deputy afterwards, under instructions from the sheriff, applied to the chief of police, and was there informed that Letchford & Co. had purchased the said store, and was furnished by the chief's aid, named Boylan, with an order to the officer in charge of the store not to interfere with the sheriff. With this order the deputy and Boylan went to the store of Letchford & Co. to inform them of the intended seizure. From there

they went to the store of plaintiffs, and thence to make the seizure—
all on the twenty-first September, 1866.    On the trial, Letchford &
Co. introduced in evidence the notarial act of sale, dated September
18, 1866, from defendant, Dreyfus, to them of the stock, fixtures and
appurtenances of a grocery store at the corner of Magazine and Orange
streets for the price of $5398 09, received by satisfaction and settle-
ment thereof being endorsed, by the vendees and holders, on the note
of the vendor, Dreyfus, for said sum, dated September 7, 1866, and
due at sixty days from its date, which seems to have been retained by
the vendees.   This act was witnessed by Boylan and Izard, two aids to
the chief of police, who had accompanied a Mr. Moss, of the house of
Letchford & Co., to the store of Dreyfus on the day of sale, which visit
resulted in all the parties repairing to the office of the notary to pass
the act of sale, after which, on the same day, the store was closed and
the keys with the lease turned over to Moss, who placed the first men-
tioned police officer in charge as keeper—Dreyfus appearing not to
have anything more to do with the store thereafter.

These aids to the chief of police profess that they acted in the matter
simply as private individuals, and that no intimidation was used to
induce Dreyfus to execute the act of sale.   Letchford & Co. also show
that Dreyfus was indebted to them for goods in the amount of the said
note and for which the note was given, but was not due at the date of
the sale.

It is evident, notwithstanding the unusual circumstances, that the
sale was real and was followed by delivery of possession prior to the
seizure under the writ of sequestration; but plaintiffs contend that,
the property being movables, it was unnecessary to resort in the first
place to the revocatory action, and they quote the cases of Kirkland *v.*
Gas Company, 1 A. 299, and Jonan *v.* Dreux, id. 364, as authority to
sustain them; and they further contend that, admitting the rule of
practice to be otherwise, such rule cannot be applied in this case, as
the intervenors did not file, *in limine*, an exception to the plea of fraud
set up in the answer to the petition of intervention, in support of which
they cite the case of Dangian *v.* Blacketer, 13 A. 595.   On this point
they reserved a bill of exceptions to the action of the judge *a quo* in
sustaining the motion of the intervenors to strike out of the answer
the charges of fraud and unjust preference and to hear no evidence
thereon, which motion was made after the trial on the merits had
begun and evidence admitted, and to which motion plaintiffs objected
on the grounds substantially :

1. That the intervenors, not having excepted to the answer, and
the parties having gone to trial on the pleadings, the motion came too
late.

2. That plaintiffs had a right in law to be heard under said pleadings.

I. The first ground is not supported by our rules of practice.   Excep-
tions to answers are not required in our system.   All the allegations
of the answer are considered as denied by the plaintiff (C. P. art. 329),
and two modes have been followed to exclude an examination of issues

improperly presented: one by striking out on motion, and the other by objecting to the admission of evidence to establish them; both being in effect the same, but the latter is deemed the more regular. See Lallands v. Ball, 20 A. 193.

II. The second ground presents the broad question of the right to attack collaterally an actual but fraudulent sale of movable property. The rule is admitted to be different in regard to a like sale of immovable property. The only case, in which we are aware a distinction has been made, is that of Kirkland v. Gas Company, 1 A. 299, quoted by plaintiffs, in which the distinction seems to be based on the want of knowledge in the seizing creditor of the fact of the sale—such knowledge not being presumed in sales of property not required to be made in writing and recorded for the information of all persons. But we are unable to perceive that the law authorizes a distinction to be made on account of the character or nature of the property. The correct rule we consider to be this: a creditor may at his peril seize under any of the writs authorized by law, and if a third possessor shows that he holds under a real contract, the seizing creditor will be required to desist (except where his proceeding may be specially permitted by law), and to resort to the revocatory action. If, on the other hand, the alleged transfer is proven to be a simulation, a mere shadow cast upon the real title, the court takes no notice of it and the seizing creditor is allowed to proceed. See 1 A. 364; 2 A. 912; 14 L. 426; 2 R. 99; 11 R. 288; 6 A. 193; 18 A. 732; C. C. 1978. The only question then that can be examined collaterally, in such cases, is that of simulation. In this case the right to seize was predicated solely on the vendor's lien, and as there was a real sale, and delivery was made prior to the seizure, the lien was thereby lost (C. C. 3194,) and the annulling of such sale for fraud could not restore the privilege and thus maintain the sequestration, but would subject the property fraudulently transferred to the payment of the plaintiffs. C. C. 1972. The Code contemplates that contracts made in fraud of creditors shall be annulled by the revocatory action, and this only when the debtor has not property sufficient to pay the complaining creditor. C. C. 1965, 1966.

We must conclude that the plaintiffs could not in this indirect mode set aside a sale although fraudulent and subject the property to their writ of sequestration, and that the Judge a quo did not err in refusing to try the question of fraud on the intervention. He did not restrain them from proving simulation.

Judgment affirmed.